UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **PETER WILSON**, *on behalf of himself and all others similarly situated*,<br><br>*Plaintiff*,<br>v.<br><br>**QUOTEWIZARD.COM, LLC**, and **PERFORM[CB], LLC**,<br><br>*Defendants*. | Civil Case No.: _____<br><br>**COMPLAINT - CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This action arises out of Defendant, Quotewizard.com, LLC ("QuoteWizard") relentless marketing practices that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2. QuoteWizard makes, or has made on its behalf, aggressive telemarketing calls soliciting its insurance placement services.

3. These calls are made to individuals on the National Do-Not-Call Registry.

4. QuoteWizard continues to make these calls even after the called party requests that Defendant cease calling.

5. The TCPA prohibits making telemarketing calls to individuals who have registered their telephone numbers on the National Do-Not-Call Registry.

6. The TCPA also prohibits making telemarketing calls to a person who, like Mr. Wilson, has previously asked not to receive such calls and makes sellers like QuoteWizard liable for calls in violation of the TCPA's internal do-not-call rules.

7. Accordingly, Mr. Wilson brings this action on behalf of himself and classes of

1

similarly situated individuals.

8. Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the [FCC]."[1] Unwanted calls are the number one consumer complaint to the Commission.[2]

9. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants,* 140 S. Ct. 2335, 2343 (2020).

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

11. This Court has jurisdiction over QuoteWizard because QuoteWizard conducts business transactions in this District, is registered to do business in the State of Ohio, and QuoteWizard made calls into this District as part of the business it conducts in this District.

12. Venue is proper in this District because Defendant targeted a resident of this District and called into this District and because some of the wrongful conduct giving rise to this case occurred in and/or was directed to this District.

## PARTIES

13. Plaintiff Peter Wilson ("Mr. Wilson") is, and at all times mentioned herein was, a citizen and resident of Lakewood, Ohio.

14. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47

---

[1]. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, ¶ 1 (2015).

[2]. *Rep. to Cong. on Caller Id Authentication Implementation Progress*, 2020 WL 7863050, at *1 (OHMSV Dec. 29, 2020)

U.S.C. § 153(39).

15. QuoteWizard is, and at all times mentioned herein was, a Delaware corporation.

16. QuoteWizard has offices located at 25700 Science Park Drive, Suite 300, Beachwood, Ohio 44122.

17. QuoteWizard may be served via its registered agent InCorp Services, Inc. located at 9435 Waterstone Boulevard, Suite 140, Cincinnati, Ohio 45249.

18. QuoteWizard is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

19. Perform[CB], LLC ("Perform[CB]") is a Delaware limited liability company located at 2389 E Venice Ave, #410, Sarasota, FL 34292. Perform[CB] is a marketing company and vendor hired by Quote Wizard to generate leads and to place calls for and on behalf of Quote Wizard.

## TCPA BACKGROUND

20. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

21. Relevant here, the TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

22. These regulations are codified at 47 C.F.R. §§ 64.1200(e)(1-2).

23. Specifically, a company may not initiate any "telephone solicitation" to a telephone

subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

24. A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

## FACTUAL ALLEGATIONS

25. Mr. Wilson is the user of his personal cellular telephone number (XXX)-XXX-0982.

26. Mr. Wilson's cellular telephone number (XXX)-XXX-0982 is used for residential purposes and is not associated with a business.

27. Mr. Wilson's cellular telephone number (XXX)-XXX-0982 has been on the National Do-Not-Call Registry since February 1, 2007.

28. Mr. Wilson personally placed his cellular telephone number (XXX)-XXX-0982 on the National Do-Not-Call Registry.

29. On or about January 25, 2023, through February 2, 2023, Mr. Wilson began receiving telephone calls from QuoteWizard or an authorized third-party calling on QuoteWizard's behalf soliciting him to purchase insurance.

30. Plaintiff was bombarded with 20 of these calls on a daily basis, multiple times a day, during this eight (8) day period.

31. These calls came from changing ten-digit numbers, which were likely "spoofed."

32. All of the calls began with the same script stating that the caller was calling with health benefits, asking if Plaintiff had Medicare or Medicaid, and that they were offering a free insurance quote with increased coverage. After much probing, on many of the calls, the caller

eventually disclosed that the caller was from Quote Wizard.

33. For example, on January 25, 2023 at 12:07pm, Mr. Wilson received a call from telephone number 470-625-1012.

34. When Mr. Wilson answered the phone, the caller advised him that his name was "Jimmy" and that he was calling regarding health benefits and asked Mr. Wilson if he had a Medicaid or Medicare plan.

35. Mr. Wilson asked what company the caller was calling from.

36. Jimmy advised Mr. Wilson that he was calling from QuoteWizard.

37. Mr. Wilson asked Jimmy for a callback number in case they were disconnected.

38. Jimmy provided Mr. Wilson with the telephone number 855-927-5020 as the call back number if they got disconnected.

39. The telephone number 855-927-5020 appears prominently on QuoteWizard's website.[3]

40. Mr. Wilson continued to ask questions about the company and the agent terminated the call.

41. On January 26, 2023 at 9:08am, Mr. Wilson received another call from QuoteWizard or a third-party authorized to call on QuoteWizard's behalf.

42. The call came from telephone number 216-956-0414.

43. The agent identified himself as "Ronny" and stated that he was calling on behalf of QuoteWizard.

44. The agent attempted to solicit Mr. Wilson to purchase insurance through

---

[3] *See* https://quotewizard.com/ (last accessed July 26, 2023).

QuoteWizard.

45. On <u>January 26, 2023</u> at 3:21pm, Mr. Wilson received another call from QuoteWizard or a third-party authorized to call on QuoteWizard's behalf.

46. The call came from telephone number 207-804-8153.

47. The agent identified himself as "Stevie" and stated that he was calling on behalf of QuoteWizard.

48. The agent attempted to solicit Mr. Wilson to purchase insurance through QuoteWizard.

49. On <u>January 27, 2023</u> at 4:12pm, Mr. Wilson received another call from QuoteWizard or a third-party authorized to call on QuoteWizard's behalf.

50. The call came from telephone number 380-215-3032.

51. The agent identified herself as "Sara" and stated that she was calling on behalf of QuoteWizard.

52. The agent attempted to solicit Mr. Wilson to purchase insurance through QuoteWizard.

53. On <u>January 31, 2023</u> at 2:24pm, Mr. Wilson received another call from QuoteWizard or a third-party authorized to call on QuoteWizard's behalf.

54. The call came from telephone number 216-499-5919.

55. The agent identified himself as "Sammy" and stated that he was calling on behalf of QuoteWizard.

56. The agent attempted to solicit Mr. Wilson to purchase insurance through QuoteWizard.

57. On <u>January 31, 2023</u> at 3:08pm, Mr. Wilson received another call from

QuoteWizard or a third-party authorized to call on QuoteWizard's behalf.

58. The call came from telephone number 216-510-1850.

59. The agent identified himself as "Bob" and stated that he was calling on behalf of QuoteWizard.

60. The agent attempted to solicit Mr. Wilson to purchase insurance through QuoteWizard.

61. On <u>February 1, 2023</u> at 12:14pm, Mr. Wilson received another call from QuoteWizard or a third-party authorized to call on QuoteWizard's behalf.

62. The call came from telephone number 605-443-5243.

63. The agent identified himself as "Donnie" and stated that he was calling on behalf of QuoteWizard.

64. The agent attempted to solicit Mr. Wilson to purchase insurance through QuoteWizard.

65. On <u>February 2, 2023</u> at 9:33am, Mr. Wilson received another call from QuoteWizard or a third-party authorized to call on QuoteWizard's behalf.

66. The call came from telephone number 603-696-2340.

67. The agent identified himself as "Danny" and stated that he was calling on behalf of QuoteWizard.

68. The agent attempted to solicit Mr. Wilson to purchase insurance through QuoteWizard.

69. On every call, Plaintiff expressly told the caller to stop calling him.

70. On every call, the caller eventually disconnected the call once Plaintiff began probing them about their identity and all persons involved with placing the call.

71. Mr. Wilson did not provide prior express invitation or permission or consent for these telephone calls.

72. QuoteWizard's violations were, at a minimum, negligent.

73. Alternatively, QuoteWizard's violations were willful and knowing because Defendant knew that Plaintiff's telephone number was registered on the national DNC list, and because Plaintiff expressly told QuoteWizard to stop calling him on each of the calls

74. Mr. Wilson and the class were damaged by the violations alleged herein. In addition to using their cellular data, storage, and battery life, they suffered an invasion of privacy, aggravation, annoyance, frustration, distraction, intrusion upon seclusion, and violations of their substantive statutory rights under the TCPA to remain free of unsolicited calls. Their privacy was improperly invaded, the QuoteWizard's calls temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities, including work, family, and personal activities, to address the unwanted telephone calls. QuoteWizard's telephone calls were annoying and a nuisance, and wasted the time of Mr. Wilson and the class members. *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

75. Apart from forcing Plaintiff to spend time investigating the source of the calls and investing time researching and hiring counsel, Plaintiff received some of the unsolicited calls while he was sharing personal and intimate time with his spouse.

76. Because Plaintiff and Class Members continued to receive calls from, or on behalf of, QuoteWizard, on their DNC registered numbers, and after they revoked any conceivable consent, it demonstrates the need for judicial intervention and injunctive relief to enjoin any continued and future harm

**DEFENDANTS' LIABILITY**

77. Defendants used automated systems to make outbound telephonic sales calls to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

78. Defendants made two or more telephone solicitations to Mr. Wilson, whose number was on the National Do-Not-Call Registry at the time of the telephone calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

79. Accordingly, for violations of 47 C.F.R. § 64.1200(c), Mr. Wilson is entitled to $500 per call through 47 U.S.C. § 227(c).

80. Mr. Wilson is entitled to $1,500 per call if Defendants' actions are found to be knowing or willful.

81. Based upon investigation of counsel, Quote Wizard has identified Perform[CB] as its marketer and vendor who placed at least one of the calls.

82. Based upon information and belief, including the accent of the voice on some of the calls, some of the calls appeared to have been initially placed by Perform[CB] or another vendor and then quickly transferred to Quote Wizard, while others were placed directly by Quote Wizard. On each of the above calls, the callers said they were calling from, with, for, on behalf of, or some like representation, Quote Wizard.

83. Defendants, directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on their behalf, conspired to, agreed to, contributed to, authorized, facilitated, assisted with, ratified, turned a blind eye to, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited calls that are the

subject matter of this Complaint.

84. To the extent Quote Wizard outsourced its robocalling, it is still liable for calls that violate the TCPA.

85. Quote Wizard is liable for third-parties' actions because it took steps to cause the calls to be made, and because the calls were made pursuant to it's actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability.

86. On May 9, 2013, the FCC's Declaratory Ruling confirmed that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

87. *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (2013) ("FCC 2013 Ruling"), 28 FCC Rcd at 6588 (¶37) (internal citations omitted).

88. Moreover, the *May 2013 FCC* Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.* at 6587 n. 107.

89. Here, Quote Wizard authorized its telemarketers to generate prospective customers,

and authorized those telemarketers to direct transfer those live leads to Quote Wizard. Defendants utilized a systematic telemarketing campaign whereby robocalls were placed in a seamless process to make it appear to Plaintiff and Class Members that Quote Wizard was calling them directly, or that they were being called on Quote Wizard's behalf, from Quote Wizard's authorized telemarketing department or call center.

## CLASS ACTION ALLEGATIONS

90. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of a proposed "Class," as defined as follows:

### THE DNC CLASS

Plaintiff and all persons within the United States to whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls in a 12-month period when the telephone number to which the telephone calls were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls from four (4) years prior to the filing of the Complaint.

(the "DNC Class")

### THE INTERNAL CLASS

All persons within the United States who, within the four years prior to the filing of the original Complaint through the date of class certification, (1) received two or more calls within any 12-month period, (2) encouraging the purchase of Defendants property, goods, or services, (3) to said person's residential telephone number, (4) after requesting that Defendants or Defendants' vendor's stop calling or making similar request.

(the "Internal DNC Class")

91. Excluded from the Class are Defendants and any entities in which Defendants have a controlling interest; Defendants' agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

92. The Members of the Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

93. The exact number and identities of the persons who fit within the Class are ascertainable in that Defendants and third parties maintain written and electronically stored data showing:

    a. The time period(s) during which Defendants or their agent(s) made the telephone calls;

    b. The telephone numbers to which Defendants or their agent(s) made telephone calls;

    c. The telephone numbers for which Defendants had prior express written consent;

    d. The purposes of such telephone calls; and

    e. The names and addresses of Class members.

94. The Class is comprised of hundreds, if not thousands, of individuals.

95. There are common questions of law and fact affecting the rights of the Members of the Class, including, *inter alia*, the following:

    a. Whether Defendants (or someone acting on their behalf) make telemarketing calls;

    b. Whether Defendants (or someone acting on their behalf) obtain prior express written consent;

    c. Whether Defendants or the entities with which they contract make solicitation calls and to telephone numbers registered on the National Do-Not-Call Registry;

    d. Whether Defendants had "prior express consent" under the TCPA to call the cell phone numbers of Plaintiff and Class Members

    e. Whether Defendants' statutory violations were willful and knowing; and

  f. Whether Defendants should be enjoined from engaging in such conduct in the future.

96. Plaintiff is a member of the Class in that Defendants placed two or more calls for telemarketing purposes, in a one-year period to his telephone number, without his prior express written consent, while his telephone number was on the National Do-Not-Call Registry.

97. Plaintiff's claims are typical of the claims of the Members of the Class in that they arise from Defendants' uniform conduct and are based on the same legal theories as these claims.

98. Plaintiff and all putative Members of the Class have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendants' unwanted calls and suffered a nuisance and an invasion of their privacy.

99. Plaintiff has no interests antagonistic to, or in conflict with, the Class.

100. Plaintiff will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent him and the Class.

101. Defendants have acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class.

102. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

103. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

104. Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the DNC Class)**

105. Plaintiff and the proposed Class incorporate the allegations of paragraphs 1-104 as if fully set forth herein.

106. Defendants made, or had made on their behalf, telephone solicitations to Plaintiff's and putative Class Members' telephone numbers.

107. Plaintiff's and putative Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

108. Plaintiff and putative Class Members each received two or more such calls in a 12-month period.

109. Plaintiff and putative Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

110. Plaintiff and putative Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendants, individually and jointly, as set forth in the Prayer for Relief below.

**COUNT II**
**VIOLATIONS OF 47 U.S.C. § 227 and 47 C.F.R. § 64.1200**
**(On Behalf of Plaintiff and the Internal DNC Class)**

111. Plaintiff incorporates by reference all the allegations contained in paragraphs 1 through 104 of this Complaint as though fully stated herein.

112. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> **(1)** *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> **(2)** *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> **(3)** <u>**Recording, disclosure of do-not-call requests.**</u> If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> \*   \*   \*
>
> **(6)** *Maintenance of do-not-call lists.* A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(1)-(3),(6).

113. Pursuant to 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

114. Plaintiff and the Internal DNC Class members made requests to not receive future solicitations.

115. Defendants failed to honor Plaintiff's and the Internal DNC Class members' opt-out requests.

116. As outlined in detail above, Defendants have violated the requirements of section 64.1200(d) by failing to (1) maintain the required written policies; (2) provide any training to their personnel engaged in telemarketing; (3) maintain an internal do- not-call list and honor consumer opt-out requests; and (4) honoring opt-out requests.

117. Pursuant to section 227(c)(5) of the TCPA, Plaintiffs and the Internal DNC Class members are entitled to an award of $500.00 in statutory damages, for each call sent by, or an behalf of, Defendants.

118. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should treble the amount of statutory damages recoverable by the members of the Internal DNC Class.

119. Plaintiffs and the Internal DNC Class members also seek injunctive relief prohibiting Defendants' illegal conduct in the future, pursuant to section 227(c)(5).

WHEREFORE, Plaintiffs respectfully request the Court grant Plaintiff and the Class members relief against Defendants, individually and jointly, as set forth in the Prayer for Relief below.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.   An order certifying the Class as defined above, appointing Plaintiff as the representatives of the Class and appointing their counsel as Class Counsel;

B.   An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C.   An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.   An award of statutory damages;

E.   An award of treble damages; and

F.   Such other and further relief that the Court deems reasonable and just.

G.   _____

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** August 11, 2023

        s/*Max S. Morgan*_____
        Max S. Morgan, Esquire
        **THE WEITZ FIRM, LLC**
        1515 Market Street, #1100
        Philadelphia, PA 19102
        Tel: (267) 587-6240
        Fax: (215) 689-0875
        max.morgan@theweitzfirm.com

        Joshua H. Eggnatz*
        Florida Bar No.: 0067926
        EGGNATZ | PASCUCCI
        7450 Griffin Road, Suite 230
        Davie, Florida 33314
        Tel: (954) 889-3359
        jeggnatz@justiceearned.com
        sgizzie@justiceearned.com

        (*pro hac vice application forthcoming)